UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DURWARD J. BENDT, | Case No. SA CV 11-1609-PJW |
| Plaintiff, | |
| | MEMORANDUM OPINION AND ORDER |
| v. | |
| MICHAEL J. ASTRUE, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

I. INTRODUCTION

Plaintiff appeals a decision by Defendant Social Security Administration ("the Agency"), denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). He claims that the Administrative Law Judge ("ALJ") erred when he: (1) relied on the vocational expert's testimony that Plaintiff's former jobs involved light work; (2) found that Plaintiff was not credible; and (3) overlooked Plaintiff's physical and mental impairments. For the reasons discussed below, the Agency's decision is affirmed.

## II. SUMMARY OF PROCEEDINGS

In May 2008, Plaintiff applied for DIB and SSI, alleging that he was disabled due to back pain, emotional problems, and blindness in one eye. (Administrative Record ("AR") 131-37, 181, 189-96.) His application was denied initially and on reconsideration. (AR 76-84.) He then requested and was granted a hearing before an ALJ. (AR 94-103.) On August 13, 2010, he appeared with counsel for the hearing. (AR 36-75.) On October 21, 2010, the ALJ issued a decision denying benefits. (AR 14-24.) Plaintiff appealed the decision to the Appeals Council, which denied review. (AR 1-3, 9.) This action followed.

## III. ANALYSIS

A. The Vocational Expert's Testimony

The vocational expert identified Plaintiff's former jobs at Orchard Supply Hardware ("OSH") as light work, though, as Plaintiff explained, some of the duties he performed in those jobs--like stocking 60 pound bags of concrete--entailed heavy lifting. Plaintiff argues that the vocational expert ignored these duties in classifying the jobs at OSH and that the ALJ in turn erred by relying on the vocational expert's testimony to conclude that Plaintiff could work. For the reasons explained below, the Court finds that the vocational expert erred but that the error was harmless.

In classifying a claimant's job, a vocational expert is required to consider all of the duties performed by the claimant on that job. *See Valencia v. Heckler*, 751 F.2d 1082, 1086 (9th Cir. 1985). A vocational expert may not consider the least demanding aspects of the job and assess a claimant's ability to perform the job based on those minimally demanding duties. *Id.*

That is what the vocational expert did here.  She classified Plaintiff's jobs at OSH as a sales clerk and a retail manager as light work--despite the fact that Plaintiff was required to lift as much as 60 pounds at a time in these positions--and concluded that Plaintiff could still perform them.  (AR 68-70.)  But, as Plaintiff testified, at OSH, all of the employees, regardless of their title, were required to perform all of the duties necessary to run the store, including lifting heavy bags of materials.  (AR 42-43.)  The vocational expert's failure to take this requirement into account in classifying Plaintiff's past relevant work was error.  *See Valencia*, 751 F.2d at 1086.

The vocational expert's error was harmless, however, because the ALJ did not rely on it in determining that Plaintiff was not disabled.  (AR 23.)  Rather, he concluded that Plaintiff could perform these jobs as they are typically performed in the national economy.  (AR 23.)  This, he is allowed to do.  *See Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001).  And the Dictionary of Occupational Titles ("DOT") lists these jobs as light work.  *See* DOT 290.477-014 (sales clerk); DOT 185.167-046 (retail manager).  Thus, the vocational expert's error was inconsequential to the ALJ's ultimate determination that Plaintiff could perform his past relevant work as it is generally performed in the national economy and, therefore, the error was harmless.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).[1]

---

[1] Plaintiff does not argue that he is incapable of performing the jobs as generally performed in the national economy.  (Joint Stip. at 3-5, 7-9.)  Rather, he focuses is on the fact that the vocational expert erred in classifying the work he did perform as light work.

B.   The Credibility Finding

The ALJ determined that Plaintiff was not credible because: (1) the physical findings by the doctors contradicted Plaintiff's claims of intense pain; (2) Plaintiff's daily activities were inconsistent with his claims of disabling pain; and (3) Plaintiff was able to work, despite his claimed impairments. (AR 22-23.) Plaintiff argues that the ALJ erred in doing so. There is no merit to this argument.

ALJs are tasked with judging the credibility of witnesses. In doing so, they may rely on ordinary credibility evaluation techniques. *Tommasetti*, 533 F.3d at 1039. Where, as here, a claimant produces objective medical evidence of an impairment that reasonably could be expected to produce the alleged symptoms, an ALJ may not discount the testimony without providing "specific, clear and convincing reasons." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).

The first reason cited by the ALJ for questioning Plaintiff's credibility was that the intensity of his reported pain was not consistent with the medical findings, particularly Dr. Enriquez's findings. (AR 21.) This is a valid reason for questioning a claimant's testimony, *see Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001) (upholding ALJ's credibility determination in part because medical evaluations revealed little evidence of disabling abnormality), and is supported by the record. (AR 265-69.) For example, Plaintiff testified that, due to problems with his neck and back, he was unable to turn his head to the right. (AR 58.) But Dr. Enriquez's examination of Plaintiff revealed that Plaintiff had no limitation in range of motion in his neck. (AR 267 ("There is

tenderness in the cervical spine area, but no limitation in range of motion.").[2])

Plaintiff has a different take on the ALJ's justification. He argues that the ALJ was actually focusing on the fact that Plaintiff did not have medical records to support his complaints, which Plaintiff contends was an improper reason for rejecting his testimony since he could not afford to pay for medical care. (Joint Stip. at 11.) Though the Court would agree that it is improper for an ALJ to rely on lack of medical records to question a claimant's testimony where the claimant is indigent and cannot afford to pay for care, *see Regennitter v. Comm'r of Soc. Sec.*, 166 F.3d 1294, 1297 (9th Cir. 1999), that is not what happened here. The ALJ explicitly noted in his decision that he was not allowed to consider the absence of medical records in assessing Plaintiff's credibility since Plaintiff was indigent and could not afford medical care. (AR 22-23.) And a review of the ALJ's decision reveals that the ALJ honored that rule.

The ALJ also questioned Plaintiff's testimony that he was unable to work because it was contradicted by Plaintiff's daily activities. (AR 22.) Again, this is a valid reason for questioning a claimant's testimony, *Tommasetti,* 533 F.3d at 1039, and is supported by the record. Plaintiff testified that he cared for himself, made his own meals, washed his clothes, drove, and shopped (three to four times a

---

[2] There is an apparent contradiction in Dr. Enriquez's report regarding range of motion in Plaintiff's neck, referred to as the cervical spine by Dr. Enriquez. On page 267, he reports that there is no limitation. On page 268, he reports that there is. Obviously, the doctor made a mistake. Reading the report as a whole, however, the Court concludes that Dr. Enriquez's mistake was on page 268. What he meant to say on page 268 was that there was a limitation in the range of motion of the lumbar spine, which is what he reported on page 267.

week). (AR 189-96.) It does not make sense that Plaintiff could perform these activities on a regular basis if he was as impaired as he claimed that he was.

The ALJ also emphasized the fact that Plaintiff worked during the period that he alleged that he was too incapacitated to work. (AR 22.) Plaintiff claims that the ALJ erred in doing so because these forays into the working world were merely unsuccessful work attempts, which should not be considered in assessing credibility. (Joint Stip. at 12.) The record does not support Plaintiff's characterization of this work. Plaintiff regularly and consistently worked for a temporary employment service from 2006 through the first quarter of 2008. (AR 146-48, 188.) As he explained in a function report that he filled out in June 2008, his regular, daily routine consisted of getting up, eating breakfast, and going to the Temporary Labor office to see if there was work available. (AR 189.) If there was, he worked; if there wasn't, he went to the park. (AR 189.) None of this would have been possible if Plaintiff was as impaired as he alleged at the hearing, where he explained:

> I have difficulty even sitting with my head supported. If I lay in bed I have to, what I do most of the time during the day is I'm laying down in the back of the van listening to AM radio, talk radio, I lay on my side, I have a pillow between my legs and that's how I can stay in one place more than 15 to 20 minutes.

(AR 58.)

The contrast between what Plaintiff claimed that he could do in his testimony and function report and what he was actually doing was so sharp that both could not be true. Plaintiff could not be so

limited that he could not hold his head up even while sitting in a chair with his head supported and still be able to drive, work two days a week, shop, and wash clothes. It was the ALJ's job to determine which version more accurately reflected reality. His decision that it was the one in which Plaintiff was not nearly as disabled as he claimed was a valid choice and will not be disturbed on appeal.[3] *See Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (holding ALJ's interpretation of the evidence, if rational, will be upheld even if other interpretations are possible).

C. <u>Plaintiff's Mental Impairment</u>

Examining psychiatrist Ernest Bagner determined that Plaintiff suffered from a mood disorder and alcohol abuse but that the only impact these ailments would have on him would be a mild to moderate limitation on his ability to handle normal stresses in the workplace. (AR 251.) The ALJ accepted Dr. Bagner's opinion with the exception of this limitation. (AR 17.) Plaintiff challenges the ALJ's finding. Though the Court sees this as a closer call than Plaintiff's other claims, it finds that there was no error.

In resolving a claim for social security benefits, ALJs are called upon to evaluate the medical evidence. In doing so, they are empowered to accept a doctor's opinion or reject it. They are also

---

[3] The ALJ found that Plaintiff's claims that he could not walk for more than a mile and could not stand for more than 15 minutes were undermined by the fact that he did not use a cane, a walker, or a wheelchair. (AR 21-22.) The Court questions the logic of this finding. Obviously, not everyone who is unable to walk a mile or stand for 15 minutes requires the use of a cane, a walker, or a wheelchair. Ultimately, however, even ignoring this finding, the ALJ provided enough legitimate reasons to support his credibility finding.

free to accept parts of an opinion and reject other parts of it.  *See*, *e.g.*, *Magallanes v. Bowen*, 881 F.2d 747, 753-54 (9th Cir. 1989) (affirming ALJ's decision to accept treating doctor's objective medical findings but reject the doctor's conclusion as to onset date of disability).  Where, as here, an examining doctor's opinion is contradicted by a non-examining doctor's opinion, an ALJ may reject it for specific and legitimate reasons.  *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

     The ALJ rejected Dr. Bagner's view that Plaintiff would have mild to moderate limitations in handling normal work stress because there was no objective support for this finding, it was contradicted by the reviewing psychiatrist, and Dr. Bagner believed that Plaintiff's condition could be resolved in six months if he took medication and avoided alcohol.  (AR 17-18.)  These are specific and legitimate reasons for questioning a doctor's opinion.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (affirming ALJ's decision to reject treating doctor's opinion because it was not supported by objective evidence); *Andrews v. Shalala,* 53 F.3d 1035, 1043 (9th Cir. 1995) (upholding ALJ's rejection of treating doctor's opinion in favor of reviewing doctor's opinion which was supported by evidence); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").  Further, there does seem to be some support in the record for the ALJ's finding regarding these points.

     The only evidence supporting Dr. Bagner's view that Plaintiff would have trouble coping with stress in the workplace was Plaintiff's subjective complaints to Dr. Bagner.  There are no reports in the file

indicating that Plaintiff ever had such issues. (AR 248-51.) And it does not appear that Dr. Bagner performed any testing to evaluate Plaintiff's ability to cope with stress in the workplace. (AR 248-51.)

Further, Dr. Bagner's opinion was contradicted by reviewing doctor Morgan. Dr. Morgan opined that Plaintiff did not have a severe mental impairment and would have no functional limitations in any areas except for maintaining concentration, persistence, and pace, in which he would be mildly limited. (AR 254-64.)

Plaintiff argues that the ALJ was not allowed to accept the non-examining doctor's opinion over the examining doctor's opinion, citing *Lester*. (Joint Stip. at 22.) This argument is not supported by *Lester*. In fact, in *Lester*, the Ninth Circuit noted that it was proper to reject a treating or examining doctor's opinion based, in part, on a non-examining doctor's opinion so long as there was other evidence to support the ALJ's decision. *Lester*, 81 F. 3d at 831 (citing *Andrews,* 53 F.3d at 1043; and *Magallanes*, 881 F.2d at 751-55).

Plaintiff also contends that the opinion of a non-examining doctor cannot amount to substantial evidence. That contention, too, is incorrect. The opinion of a non-examining doctor can amount to substantial evidence if it is supported by other evidence and is consistent with it. *Andrews,* 53 F.3d at 1043. Dr. Morgan's opinion that Plaintiff did not have a severe impairment and was not limited in work-related function was supported by the record. Plaintiff was capable of caring for himself and was working before and after he allegedly became disabled. Further, there is no evidence that Plaintiff's alleged inability to handle workplace stress ever manifested itself at any of his jobs.

The third reason relied on by the ALJ to reject Dr. Bagner's opinion was that Dr. Bagner believed that Plaintiff "'should be significantly better in less than six months'" if he took medication and avoided alcohol. (AR 17, 251.) Generally speaking, an impairment that can be controlled with medication is not disabling for purposes of determining eligibility for benefits in social security cases. *Warre*, 439 F.3d at 1006. It is not clear to the Court that Dr. Bagner's remark--almost in passing--that Plaintiff's condition "should" improve in six months if he took medication and stayed away from alcohol is sufficient to establish that Plaintiff's condition would improve in that period such that any question regarding his ability to cope should be ignored. Plaintiff was not taking medication at the time he was seen by Dr. Bagner and it seems that the ALJ put too much emphasis on Dr. Bagner's comment to conclude that there was medication that would resolve any issues Plaintiff might have in six months. Overall, however, the Court finds that the ALJ's other reasons for discounting Dr. Bagner's view are specific and legitimate and are supported by the record.

Plaintiff points out that an Agency employee who interviewed him in connection with his application noted that he had difficulty concentrating and went off on tangents. (Joint Stip. at 20, 23-24.) In Plaintiff's view, this evidence supports his position that he suffers from a severe mental impairment. Plaintiff argues that, since the employee's observations were consistent with Dr. Bagner's opinion, the ALJ should not have rejected them. Again, the Court disagrees. The employee was a lay witness. He is not competent to offer opinions regarding Plaintiff's mental health. As to any observations he made, the ALJ was empowered to reject them for reasons that were germane to

the employee. *Stout v. Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). The ALJ did so. (AR 18.) He found that the employee's observations were inconsistent with Dr. Morgan's and Dr. Bagner's opinions. (AR 18.) Even giving Plaintiff the benefit of the doubt and assuming that the employee's observations were consistent with Dr. Bagner's, they were contradicted by Dr. Morgan's and that is reason enough to uphold the ALJ's finding on this issue.

In sum, a fair reading of this record demonstrates that Plaintiff had little or no trouble attending to his needs and coping with people. Though he was arrested in 2006 for beating up his girlfriend, Plaintiff explained at the administrative hearing that this was simply a misunderstanding. (AR 64.) Even assuming that this explanation was contrived, Plaintiff pointed out at the hearing that in the intervening four years he was able to stay out of trouble and his conviction for domestic violence was expunged. (AR 64-65.) Thus, there is little or no evidence in this record that Plaintiff suffered from a severe mental impairment and, therefore, the ALJ's finding that he did not is affirmed.

D.   <u>Plaintiff's Physical Impairment</u>

Finally, Plaintiff contends that he has a severe impairment in his hands and arms, as documented by Dr. Enriquez, and that the ALJ erred in failing to recognize this. (Joint Stip. at 24-25.) There is no support for this argument.

When Dr. Enriquez examined Plaintiff, he noted "bunching" in Plaintiff's bicep. (AR 267.) He concluded, however, that this would not impact Plaintiff's ability to occasionally lift and carry 20 pounds, even above his shoulder, and frequently handle, grasp, and finger. (AR 268.) Thus, whatever limitation Plaintiff's bunching

11

caused, according to Dr. Enriquez, it did not interfere with his ability to perform the functions necessary for light work. As such, this claim is rejected.

## IV. CONCLUSION

For the reasons set forth above, the Agency's decision is affirmed and the case is dismissed with prejudice.

IT IS SO ORDERED.

DATED: September 25, 2012

PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\BENDT, 1609\memo opinion and order.wpd